IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )
v.                                  )     CIVIL ACTION NO. 06-0059-BH
                                    )        (Criminal No. 01-00187-002)
TERRY MARK HARRISON,                )
                                    )
          Defendant.                )

**ORDER**

          The defendant, Terry Mark Harrison, has filed a motion (Doc. 152) under 28

U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed on January 20, 2005

(Doc. 140) upon the revocation of his supervised release.  Harrison asserts two grounds

for relief: (1) ineffective assistance of counsel to the extent that counsel failed and/or

refused to appeal from the sentence imposed upon the revocation of his probation, and (2)

the sentence of 147 months was imposed in violation of the laws and constitutions of the

United States.  The Court finds that the response of the United States with its attached

affidavit are sufficient to allow the Court to resolve the disputed factual allegations

regarding the notice of appeal issue without an evidentiary hearing.  Upon consideration

of the § 2255 motion, the Government's response in opposition thereto (Doc. 163), and

all other pertinent portions of the record, the Court concludes that the motion is due to be

denied.

### FINDINGS OF FACT AND PROCEDURAL BACKGROUND

The defendant, Terry Mark Harrison, and three co-defendants were charged on November 29, 2001, by a grand jury sitting in the Southern District of Alabama, with methamphetamine-related charges (Doc. 50).  On February 28, 2002, Harrison pled guilty to conspiracy to possess with intent to distribute in excess of 500 grams of methamphetamine, in violation of 21 U.S.C. § 846 (Count One), and using, carrying, or possessing a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count Three).  As part of the guilty plea colloquy, Harrison affirmed that he was completely satisfied with his counsel and the advice he had received (Doc. 161 at 9-11).  Harrison acknowledged that he faced a sentence of 10 years to life imprisonment on Count One, and a consecutive sentence of five years as to Count Three (*Id*. at 11-12).

The pleas agreement also contained the following limited waiver of right to appeal, in which Harrison waived his right to challenge his sentence on direct appeal (Doc. 97, ¶ 18):

> With the limited exceptions noted below, TERRY MARK HARRISON also waives his right to challenge any sentence [imposed in accordance with the recommendations of the United States], or the manner in which it was determined, in any collateral attack, including but not limited to, a motion brought under 18 U.S.C. § 2255.
>
> TERRY MARK HARRISON reserves the right to contest in an appeal or postconviction proceeding any of the following:
>
>> a. Any punishment imposed in excess of the statutory maximum;
>>
>> b. Any punishment that constitutes an upward departure from the guidelines range; or

                    c. A claim of ineffective assistance of counsel.

Id., ¶¶ 19-20.  The Court discussed the waiver with the defendant as part of his guilty

plea:

| | |
|---|---|
| THE COURT: | The Plea Agreement is in writing.  The Court has read it. I'm going to have the clerk hand it to you. I want you to look at it and tell me if you recognize it, and if your signature appears on there, and if that, in fact, is your signature. |
| DEFENDANT: | Yes, sir, it is. |
| THE COURT: | Have you read that agreement? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Have you gone over it with Counsel? |
| DEFENDANT: | Yes, sir, I have. |
| THE COURT: | Does it fully contain all of the things that you have negotiated and agreed to in connection with this Plea Agreement? |
| DEFENDANT: | Yes, sir, it does. |
| THE COURT: | Anything in it that you think you should take away or add to it? |
| DEFENDANT: | No, sir. |
| THE COURT: | It contains a number of things, including your limited right to appeal. Are you aware of that? |
| DEFENDANT: | Yes, sir, I am. |
| THE COURT: | And to file post-trial motions under the writ of habeas corpus. And you agreed to that? |

DEFENDANT:        Yes, sir.

Id. at 18. The Court accepted the defendant's plea of guilty, finding that it was knowingly

and voluntarily entered. Id. at 22-23. On September 16, 2002, the Court sentenced the

defendant to a term of five years' probation. Judgment was entered on September 17,

2002. (Doc. 112.) The defendant did not appeal.

Harrison violated the terms of his probation with drug tests on February 24, 2004,

and March 4, 2004, that were positive for cocaine, and a third test on May 24, 2004,

positive for methamphetamine (Doc. 119).  Harrison appeared with counsel on July 15,

2004, and executed a waiver of final revocation hearing (Doc. 128).  The Court ordered

that Harrison's revocation hearing be continued and that the Probation Office submit status

reports regarding Harrison every six months (Doc. 129).  The Court admonished Harrison

that future violations would result in the Court imposing a maximum guidelines sentence

of 147 months.[1]

Harrison was involved in an episode of domestic violence on October 5, 2004, with

his girlfriend, Erica Marie Williams (Doc. 131).  Williams advised the authorities that she

believed Harrison was using drugs (*Id.*).  The Probation Office recommended that no

action be taken pending resolution of the Baldwin County case.

---

[1]Although the July 15, 2004 hearing transcript is not part of the record, the Court's
warning to Harrison is documented in the October 27, 2004 violation report and the statements
by the parties and the Court at the January 20, 2005 revocation hearing.

4

On January 20, 2005, Harrison filed a waiver of final revocation hearing admitting to drug use in violation of condition 7 of his terms of release (Doc. 138).  At the revocation hearing held on that date, Harrison's counsel recounted the prior hearings in the case and noted the original guidelines calculation of a range from 130-147 months, the United States' motion for a 50% reduction, and this Court's imposition of five years' probation (Doc. 159, at 5-8).  Harrison's counsel also noted Harrison's repeated drug use which had resulted in his appearances before the Court.  Although Harrison's counsel acknowledged the Court's earlier admonition that future violations would result in a maximum guidelines sentence of 147 months, he sought a sentence for Harrison of only 24 months (*Id*. at 12).  The United States sought a sentence in excess of 100 months.

After hearing Harrison's explanation for why he had failed to enter drug treatment as he had promised (*Id*. at 23-26), the following colloquy occurred:

> THE COURT: And I think what I told you [at the July 15, 2004 hearing] was if in fact you did come back before me that you would – that I had considered the guidelines at the time and what the guidelines provided and the intrigue that you had provided and the statement that the government had provided.  But I think my advice to you was that if you did come back before me, then you were going to get the high end of the guidelines.
>
> DEFENDANT: Yes, sir.
>
> THE COURT: And I think that that was a promise to you, a very strong promise to you.  And that's what I'm going to impose.  The judgment of this Court will be you are sentenced to the custody of the attorney general for the period of 147 months. . . .

>        You have a right to contest the decision of this Court.
>        And if you do, you have to give notice to this Court in
>        writing within ten days of your decision to do that.  If
>        you fail to do it, you may waive your right to relief from
>        such an appeal.  Do you understand what your rights
>        are?

DEFENDANT:        Yes, sir.

*Id.* at 26-27.  Harrison did not appeal.

On March 18, 2005, Harrison wrote his counsel, Fred Tiemann, Esq., and accused

him of failing to file a notice of appeal on the defendant's behalf (Exh. A, attachment).

Tiemann responded with a letter on March 29, 2005, stating:

>        I am in receipt of your letter dated March 18, 2005.  I have not
>        received any telephone calls from you since I last saw you at the Evergreen
>        Jail on March 18, 2005.
>
>        With regard to concern numbered 1: You <u>never</u> asked to appeal your
>        sentence.  At our last conversation, you indicated that you <u>would have</u>
>        appealed your sentence if you had known that you were not going to get a
>        Rule 35 reduction.  If called to do so, I will testify to the same.  Because you
>        did not request an appeal, no notice of appeal was filed.  It is now too late to
>        appeal your sentence.  With regard to your concern numbered 2: I have
>        previously provided you with a copy of your entire file.
>
>        I no longer represent you in this matter as my appointment has
>        expired.  As you are now making the false accusation that you requested an
>        appeal, I cannot represent you further as your accusation creates a conflict of
>        interest.

*Id.*, emphasis in original.

Pursuant to the prisoner mailbox rule set forth in *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999), Harrison has timely filed the present habeas petition.[2]

## CONCLUSIONS OF LAW

Harrison raises two claims in his habeas petition.  First, he asserts that his counsel at revocation, Fred Tiemann, was ineffective for failing to file a notice of appeal on his behalf.  Second, he asserts that his sentence of 147 months was imposed "in violation of the laws of the United States and was . . . unconstitutional."  (Doc. 152.)

### A.    Ineffective Assistance of Counsel

The standard applicable to Harrison's ineffective assistance claim is well-established.  The Eleventh Circuit recently reiterated:

> In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court established a two-prong test for deciding whether a defendant has received ineffective assistance of counsel.  The defendant must show (1) that counsel's performance failed to meet "an objective standard of reasonableness," *Id*. at 688, 104 S.Ct. at 2064; and (2) that the defendant's rights were prejudiced as a result of the attorney';s substandard performance. *Id*. at 693, 104 S.Ct. at 2067.

*Gomez-Diaz v. United States*, 433 F.3d 788, 791 (11th Cir. 2006).  In order to meet the prejudice prong in this case, Harrison must demonstrate "a reasonable probability that, but

---

[2]In *Maderos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000), the Eleventh Circuit held that, in a § 2255 case where no direct appeal was filed, judgment became final "ten days after it was entered," citing F.R.App.P.4(b0(1).  The Court agrees that, by analogy, if Harrison had ten days to appeal the January 27, 2005 order revoking his probation, his motion was timely filed on February 1, 2006.

for the lawyer's deficient consultation, he would have timely appealed." *Gomez-Diaz*, 433
F.3d at 791.

An attorney's failure to obey a defendant's express directive to file a notice of
appeal is *per se* deficient performance under *Strickland*. *Roe v. Flores-Ortega*, 528 U.S.
470, 477-80 (2000). Prejudice is to be presumed, regardless of the merits of any issue on
appeal, where the evidence establishes that the attorney acted contrary to the defendant's
wishes. *Gomez-Diaz*, 433 F.3d at 793. In *Gomez-Diaz*, the § 2255 appeal was remanded
to the district court for an evidentiary hearing to determine what communications had
occurred between the defendant and his attorney regarding a notice of appeal. In
remanding the case, the Eleventh Circuit noted that the pleadings were "insufficient to
indicate whether Petitioner's first expression to his attorney of his desire to appeal
triggered the *per se* duty to appeal outlined in *Flores-Ortega*." *Id.* at 792.

As applied to the case at bar, no such ambiguity exists. Harrison's unsupported
allegation regarding his counsel's failure to obey his alleged directive to appeal is simply
not credible given Fred Tiemann's Affidavit and this Court's extensive dealings with both
Harrison and Tiemann. Harrison has not established deficient performance by Tiemann
under *Strickland* and cannot.

Harrison knew of his right to appeal and that such appeal was required to be made
within ten days of his sentencing. The Court so advised him at the conclusion of the
January 20, 2005 revocation hearing and Harrison acknowledged that he understood (Doc.
159 at 26-27). The first evidence, however, of his professed desire to appeal was in his

March 18, 2005 letter to his counsel in which he alleges that counsel had failed to file a notice of appeal as instructed.  Mr. Tiemann responded firmly that Harrison made no such request but, instead, opted to cooperate with the government in hopes of obtaining a Rule 35 motion for reduction of sentence.  It is apparent not only from Tiemann's letter to Harrison and his Affidavit but from Harrison's own letter to Tiemann that, only upon failing to obtain such a Rule 35 motion from the government, did Harrison consider appealing his sentence.  It is certainly clear that Harrison made no effort either to respond to Tiemann's letter of March 29, 2005, or to pursue an appeal on his own initiative for the next ten months.  Harrison waited until January 26, 2006, one year from the date his sentence was imposed, to first raise his allegation concerning a notice of appeal with the Court.  Harrison's claim under *Strickland* is due to be denied.

   **B.**   **"Unconstitutional" Sentence**

   Harrison challenges his 147 month sentence as "unconstitutional" because the United States originally sought a 50% reduction pursuant to U.S.S.G. § 5K1.1 and he was guilty of a "Grade C" violation.   Such claim is not only without merit but is subject to dismissal because Harrison waived the right to collaterally attack his sentence as part of his plea agreement.

   In general, waivers of the right to appeal are enforceable if knowingly and voluntarily entered.  *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993), *cert. Denied*, 513 U.S. 1051 (1994).  A sentence appeal waiver is valid and enforceable if either (1) the district court specifically questioned the defendant concerning the sentence appeal

waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver. *Bushert*, 997 F.2d at 1351. *See also*, *United States v. Buchanon*, 131 F.3d 1005, 1008 (11th Cir. 1997)("[W]e require that the district court specifically question the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, unless it is otherwise clear from the record that the defendant understood the significance of the waiver."). Sentence appeal waivers entered into as part of a Rule 11 plea agreement are enforceable in § 2255 proceedings. *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).

As applied to the case at bar, the colloquy between the Court and Harrison at his guilty plea hearing, as set forth above, clearly establishes that the Court not only questioned Harrison about the appellate waiver and waiver of any collateral attack but that Harrison understood his appellate rights and that he was, *inter alia*, giving up the right to file a collateral attack for a sentence within the guidelines range. Harrison voluntarily and knowingly entered into his plea agreement with the limitations specified therein. *See*, Doc. 161 at 22-23; *Bushert*, 997 F.2d at 1351. In addition, the plain language of the appellate waiver informed Harrison that he was waiving his right to a collateral attack on his sentence, with only three limited exception not applicable here.

Even if Harrison's sentencing challenge were not subject to dismissal as having been waived, it is still clearly without merit. After pleading guilty to violations of 21 U.S.C. § 846 and 18 U.S.C. § 924©), Harrison's adjusted base offense level of 27, and his criminal history category of I resulted in a guidelines sentencing range of 70-87 months as

to Count One, to be followed by the mandatory 60-month consecutive term for Count

Three.  (PSI at ¶¶ 29, 34, 64 and 65).  This Court was free to impose a sentence within the

original guidelines calculation upon revocation of Harrison's probation.

When a defendant such as Harrison violates the terms of his probation, the district

court is empowered pursuant to 18 U.S.C. § 3565(a)(2) to "revoke the sentence of

probation and *resentence the defendant under subchapter A* [of Chapter 227, Title 18,

United States Code, i.e., 18 U.S.C. §§ 3551-3559]."  18 U.S.C. § 3565(a)(2) (emphasis

added).  This Court's imposition of a 147 month guidelines sentence upon revocation of

Harrison's probation was entirely consistent with § 3565.  Harrison had been clearly

admonished by this Court at the July 15, 2004 hearing that he risked the imposition of a

maximum guidelines sentence if he continued to violate the terms of his probation.  The

Court indeed offered Harrison great mercy at his original sentencing and his first

revocation hearing and, only upon Harrison's continued violation of the terms of his

probation, did the Court impose the sentence it had earlier warned him would be imposed

and offer sufficient reason why the sentence was appropriate (Doc. 159 at 23-27).

Harrison's challenges to his sentence are based upon guidelines which apply to the

revocation of a term of supervised release but do not control a revocation of probation.

Consequently, Harrison's claim is due to be denied on the merits.

## CONCLUSION AND ORDER

For the reasons stated above, the Court concludes and it is therefore **ORDERED** that defendant's § 2255 motion to vacate, set aside, or correct his sentence is due to be and is hereby **DENIED.**

**DONE** this 23rd day of May, 2007.

_____s/ W. B. Hand_____
SENIOR DISTRICT JUDGE
